MERCHANT (RUTTER v.). See Case No. 12,179.

## Case No. 9,438.

### MERCHANTS' & MANUFACTURERS' BANK v. STAFFORD NAT. BANK.

[44 Conn. 564.]

District Court, D. Connecticut. May, 1877.

BANKS AND BANKING—NEGLIGENCE IN COLLECTING DRAFT—LIABILITY OF BANK.

[A draft payable at sight was left with plaintiff bank for collection, which forwarded it to defendant bank with instructions to return without protest if not accepted or paid. Defendant promptly presented the draft, and the drawee said he would look up the matter. Defendant bank then mislaid the draft, and did nothing further for several weeks. Immediately after presentation of the draft the drawee wrote the drawers that it was paid; and his letter being shown to plaintiff bank, it thereupon paid to the drawers the amount of the draft. The drawee subsequently ascertained that he owed the drawer nothing, and the draft was not paid. *Held*, that defendant bank was guilty of negligence in not immediately notifying plaintiff as to the state of affairs, and was therefore liable for the amount of plaintiff's loss, it appearing that the drawers had no visible property from which the amount could be made by legal proceedings.]

At law.

SHIPMAN, District Judge. This is an action of assumpsit to recover damages for the alleged breach of contract by the defendants in not collecting a draft which was forwarded to them for collection and for non-compliance with their undertaking as collecting agents. The action was tried by the court, both parties having by written stipulation waived a trial by jury. The facts which were found to have been proved on the trial are as follows: Both parties to the suit are national banking associations. S. Folsom & Co., of Detroit, Michigan, endorsed and delivered for collection, on August 30th, 1876, to the plaintiffs, a bank in Detroit, said Folsom & Co.'s draft of that date for $500 upon Julius Converse, treasurer of the Mineral Springs Manuf'g Co., payable at sight to the order of the drawers, at the Stafford National Bank. On the same day the plaintiffs forwarded said draft to the defendant corporation, endorsed, "Pay R. S. Hicks, cashier, or order, for collection," and attached to the draft the following notice: "If not accepted or paid, return without protest." The draft was enclosed in a letter to the defendants' cashier, of which the following is the material portion: "I enclose for collection and remittance to the Merchants' Natl. Bank, N. Y., for our account. Return at once, if not paid. Yours truly, F. W. Hayes, Cashier. No protest. $500." The letter and draft were received by the defendants on September 1st or 2nd, who presented it for acceptance to the drawee prior to September 4th. He replied he would look up his account and inform the cashier in regard to payment. Mr. Converse, as treasurer, was also advised by the drawers by letter of Aug. 30th, that such a draft had been forwarded, and on Sept. 4th wrote them as follows: "The $500 draft has been received and paid. Don't draw any more. The balance that may be due on what you have brought, if any, we will remit for when we get your full account." Upon the receipt of this letter on the afternoon of Sept. 5th the drawers showed it to the plaintiffs, who, believing, from its contents that the draft had been duly paid to the defendants, paid the drawers $500, less $1.25 charges of collection. Mr. Converse was also president of the defendant corporation, which fact was known to the plaintiffs. After Sept. 4th Mr. Converse wrote S. Folsom & Co. making inquiries in regard to items of their account which were not understood. Not hearing from them, or not receiving satisfactory replies, he began to investigate the account, and ascertained that he had overpaid them $300, not including the $500 draft. When he commenced this investigation he did not know that the draft had not been paid by the defendants. Meanwhile the draft had been mislaid in the defendants' bank, and had escaped the attention of the cashier, who had no further conversation with Mr. Converse on the subject until Sept. 22nd. On that day Mr. Converse directed the cashier to return the draft unpaid, who accordingly on

September 22d wiote to the plaintiffs for the first time on the subject of the draft and returned it unpaid. The plaintiffs thereupon demanded repayment from S. Folsom & Co., which was refused. Folsom & Co. are solvent, and ordinarily pay their bills, but a judgment against them cannot be collected from any visible property without difficulty. If the defendants had written the plaintiffs on or prior to Sept. 4th that the draft had not then been paid, the defendants would not have paid Folsom & Co. The amount of the draft has never been paid to the defendants, and no part of the sum has ever been repaid to the plaintiffs.

The principles of law which I deem to be applicable to the case upon the foregoing facts, are as follows: The relation which the defendants sustained to the plaintiffs was that of an agent who has undertaken with his principal upon sufficient consideration to perform a certain duty. The general duty of an agent who receives for collection a bill of exchange is to use due diligence in presenting the same for acceptance, and in presenting it for payment, if it has been accepted, and to give the holders and other parties to the paper, by the next day's post, the notices of dishonor required by law in case acceptance or payment is refused, and to give to his principal any special notice which is required by the terms of the instructions to the agent, or of the contract which the agent has entered into with his principal. The agent is also required to protest, in case of non-acceptance, or non-payment, if protest is not forbidden, and to send the protest to the holder. Walker v. Bank of New York, 5 Seld. [9 N. Y.] 582; Hamilton v. Cunningham [Case No. 5,978]. The special instructions which were given in this case to the defendants, which instructions by the acceptance of the agency they undertook to observe in substance, were as follows: The draft was not to be protested, but was to be returned at once to the plaintiffs if not paid; if paid, the amount was to be remitted to a specified bank in the city of New York. It thus became the duty of the defendants to present the draft for acceptance and if acceptance was refused, or payment was not made (no days of grace being allowed in this state upon sight drafts) to return the draft at once, or to notify the plaintiffs of the delay in payment. The draft was received on Sept. 1st or 2nd. It was promptly presented for acceptance, but without any formal acceptance so far as the defendants were aware. No further communication was had with the drawer, and the draft was mislaid until Sept. 22nd, when for the first time any information was given to the plaintiffs. The defendants do not seem to have appreciated the duties which devolved upon them by reason of the agency. They were manifestly guilty of laches, and, it is not denied that a collecting agent may recover from his agent the loss which the former has sustained by reason of the laches of the latter. Commercial Bank v. Union Bank, 11 N. Y. 203.

The important question however in this case is as to the amount of damages which were sustained by the plaintiffs in consequence of the defendants' neglect. The agent by neglecting any part of his duty does not necessarily become responsible for the whole debt. The damages are not necessarily commensurate with the amount of the draft which has been remitted for collection. "A person acting on commission, who by his misconduct has brought loss upon his principal, is responsible to the precise extent of the loss produced by that misconduct." Hamilton v. Cunningham, supra; Van Wart v. Woolley, 3 Barn. & C. 439, Moody & M. 520. In this case the payment was made by the plaintiffs upon the strength of the drawee's letter of Sept. 4th, and I have been in some doubt, the payment to Folsom & Co. having been made in reliance upon the drawee's assertion that the draft had been paid, whether the defendants, although liable for the non-performance of their duty, were liable for the full amount which was paid to Folsom & Co. But the duty of the defendants was to return the draft at once if not paid, or inform the remitter of the delay in payment. If the defendants' cashier had discharged his duty, and had informed the plaintiffs of the non-payment, no injury would have accrued to the plaintiffs, who would have been seasonably advised of the mistake of the drawee.

Furthermore, if the defendants had promptly performed their duty, and obtained an answer to their demand of payment the draft would either have been paid on September 4th, for the drawee was apparently then ready to pay, or on the same day they would have notified the plaintiffs of non-payment. In either case no loss would have been sustained by the plaintiffs. Although Folsom & Co. are liable to the plaintiffs for the amount of money which they paid through mistake of fact, which amount was not actually due to Folsom & Co. from the drawee (Bank of Orleans v. Smith, 3 Hill, 560; Wingate v. Mechanics' Bank, 10 Pa. St. 104; East Haddam Bank v. Scovil, 12 Com. 303); yet the loss having actually occurred to the plaintiffs through the laches of the defendants, and the amount of that loss having been ascertained, the plaintiffs may look also to the defendants for satisfaction. Judgment should be entered in favor of the plaintiffs for $498.75, and interest from Sept. 5th, 1876.