## MARY E. HALL vs. JOHN A. HALL AND WIFE.

Certain lands with buildings thereon were purchased by *H*, and a conveyance of the same made at his request by the purchaser to his wife for her sole use. *H* gave his notes on time for the price, and signed a written agreement, to which his wife was not a party, to make with her a mortgage back of the property after a prior mortgage to a savings bank had been increased sufficiently to raise money to repair the buildings. Afterwards a new note and mortgage were executed by *H* and his wife to the savings bank for an increased amount, the old note and mortgage being settled in the transaction. The wife then refused to give the second mortgage in accordance with her husband's agreement. She had accepted the deed when it was given, but it did not appear that she knew of the agreement to make the mortgage. In a suit to compel her to execute the mortgage, it was held—

1.   That as the wife had parted with nothing the property was not to be protected in her hands under those principles which ordinarily protect the property of married women.

2.   That the fact that she had signed the note and mortgage to the savings bank did not affect the case.

3.   Nor the fact that she did not know of the agreement to give the mortgage when she accepted the deed. When it came to her knowledge she could have surrendered the property and have been in no worse condition than before the deed was given; and this she was bound to do or else perform the agreement which was a material part of the consideration for the deed.

4.   That the transaction created an equitable mortgage which the court would establish by its decree.

The plaintiff acquired the notes by gift. Held not to affect the case.

Whether a vendor's lien, supposing it to be recognized by our law, can be enforced in favor of an assignee of the vendor's claim: *Quære*.

Whether a vendor's lien exists in this state, discussed in the argument, but not decided.

SUIT to establish an equitable mortgage and to enforce a vendor's lien; brought to the Superior Court in Litchfield County. The following facts were found by a committee.

On the 10th day of May, 1873, William Hall was the owner in fee (subject to a mortgage to the Litchfield Savings Society, on which was due about $1,800,) of several pieces of land, with buildings thereon, situated in the towns of Litchfield and Harwinton, in Litchfield County, described in the plaintiff's complaint. On that day he agreed with John A. Hall, his son, who resided in the town of Litchfield, to sell him the property for $5,000, subject to the mortgage, and by agreement he on that day conveyed the premises to Elizabeth E. Hall, the wife of said John, to her sole and separate use, subject to the mortgage. The record title still remains in her, subject however to a new mortgage to the Litchfield Savings Society, dated March 2d, 1877, to secure the payment of $2,500 and interest.

No money was paid down, but John A., in consideration of the deed, gave William ten promissory notes signed by himself alone for $500 each, dated the 10th day of May, 1873, and payable respectively in twelve, twenty-four, thirty-six, and forty-eight months, five, six, seven, eight, nine and ten years from their date; and also then, by a writing signed by himself, promised William that the said Elizabeth and he would give a mortgage on the property to secure the payment of the notes after he had increased the mortgage to an amount sufficient to put the buildings on the property in repair.

Mrs. Hall was not present at the time of the transaction, and did not know of it till after it had taken place. She subsequently accepted the deed, but it was not proved that when she accepted it she had knowledge of the execution of the notes, or of her husband's agreement that he and she should give a mortgage to secure the payment of the notes, and no evidence in writing was offered to prove that she agreed to give such mortgage.

On the 2d day of March, 1877, she and her husband executed together a new note and mortgage of the premises

to the Litchfield Savings Society for $2,500 (which is still outstanding) and from the proceeds thereof paid the original mortgage.

If it be competent for the said John and the said Elizabeth to testify against each other in this suit, it is found that the deed of William was given to her because the said John had received and expended a large sum of money belonging to her, and because he was in embarrassed pecuniary circumstances and could not hold property without its being liable to be attached by his creditors; also that the said John, after the execution of the last mortgage, proposed to her to give a mortgage to secure the notes given by him to William, which she declined doing. If it be not competent for said Elizabeth and said John to testify against each other, then these facts are not found.

There was no consideration proved for the deed to said Elizabeth other than is hereinbefore expressed, and she has never paid anything towards the premises, or done or given anything therefor, or on account of the same, nor has she expended anything thereon, other than as above stated.

Of the ten notes the one first payable has been paid, but the remaining nine are unpaid.

William Hall died in the year 1874, but previous thereto he assigned the notes to Catharine Freestone, now deceased. She died in the year 1878, and in her last sickness gave the notes to the plaintiff. She also left a will, which has been duly proved, by which she bequeathed all her property to the plaintiff and appointed her executrix of her will. She accepted the trust, and is now the owner of the unpaid notes, and of the agreement of said John to give the mortgage.

John A. Hall has, since the date of the notes, had no means from which they could have been collected, and is unable to pay the same. Mrs. Hall alone made defense.

Upon these facts the case was reserved for the advice of this court.

*A. H. Fenn*, for the plaintiff.

Hall v. Hall.

1. The plaintiff is entitled to a decree establishing in her favor a vendor's lien on the premises. The doctrine of vendors' liens is based on the highest equity, and is recognized in England, in the United States courts, and in a majority of the states of the union. 2 Washb. R. Prop., 3d ed., 87; *Manly* v. *Slason*, 21 Verm., 271; *Kent* v. *Gerhard*, 12 R. Isl., 92; *Chilton* v. *Braiden's Admx.*, 2 Black, 460. The better opinion is, that this lien is not confined to the vendor's person, but passes to the assignee of a note given for the purchase money. *Johns* v. *Sewell*, 33 Ind., 1; *Lagow* v. *Badollet*, 1 Blackf., 419; *Chesebrough* v. *Millard*, 1 Johns. Ch., 409; *Johnston* v. *Gwathmey*, 4 Little, 317; *Edwards* v. *Bohannon*, 2 Dana, 98; *Watt* v. *White*, 33 Tex., 421; *Crow* v. *Vance*, 4 Iowa, 434; Sugden on Vendors, 683, and note. "The principle is well supported by authority, that if the negotiation of purchase, and agreement to sell, be with one person, but the deed be at his instance made to another, by way of gift or advancement, the person to whom the title is made will be regarded as a volunteer, taking the estate without consideration, and the lien will arise, as when the contract of sale was made with the husband, and his obligation for the money taken, but the deed was made to his wife. 6 Sm. & Marsh., 296. Also where the father, upon the marriage of his daughter, put her in possession of land as an advancement, and she and her husband contracted to sell the land, but the father made the deed. Here the daughter was the substantial vendor, and she and her husband could assert the lien." *Campbell* v. *Henry*, 45 Miss., 325. Whether vendors' liens exist in Connecticut, is said to be in doubt. We submit that they do. 2 Swift Dig., 128; *Watson* v. *Wells*, 5 Conn., 472; *Atwood* v. *Vincent*, 17 id., 583; *Chapman* v. *Beardsley*, 31 id., 115; *Middletown Savings Bank* v. *Fellowes*, 42 id., 45.

2. Be this as it may, however, the plaintiff is entitled to a decree establishing in her favor an equitable mortgage upon the premises. "An agreement to give a mortgage, not objectionable for want of consideration, is treated in equity as a mortgage, upon the principle that equity will

treat that as done which by agreement is to be done. This doctrine has been asserted frequently, both in this country and in England." Jones on Mortg., (2d ed.) § 163, and numerous cases there cited; *Matter of Howe*, 1 Paige, 129. In *Daggett* v. *Rankin*, 31 Cal., 326, the court says:—" The doctrine seems to be well established, that an agreement in writing to give a mortgage, or a mortgage defectively executed, or an imperfect attempt to create a mortgage, or to appropriate specific property to the discharge of a particular debt, will create a mortgage in equity, or a specific lien on the property so intended to be mortgaged. The maxim of equity upon which this doctrine rests is, that equity looks upon things agreed to be done as actually performed. The true meaning of which is, that equity will treat the subject matter as to collateral consequences and interests, in the same manner as if the final acts contemplated by the parties had been executed exactly as they ought to have been." 1 Story Eq. Jur., §§ 64, 790; Willard's Eq., §§ 298, 299; *Delaire* v. *Keenan*, 3 Dessau., 74. The fact that Mrs. Hall did not sign the writing makes no difference; she accepted the deed, and whether she knew of the agreement or not is also immaterial, since she is a simple volunteer and has paid no consideration. Cases *supra*.

*A. P. Bradstreet*, for the defendant, Elizabeth E. Hall.

1. The written agreement of John A. Hall that a mortgage should be given by his wife, of course can not bind her. He had no power as husband to bind her. Courts will not enforce such a contract against a wife. *Annan* v. *Merritt*, 13 Conn., 487. If the plaintiff has any rights against her· they must rest upon some equity growing out of the whole transaction.

2. There is nothing in the transaction to raise any equity against Mrs. Hall. The deed of the property was delivered to her, and accepted by her, without any knowledge upon her part that there were any notes outstanding which her husband had executed to the vendor, and without any knowledge that he had agreed with his father to give him a

mortgage to secure any notes. The first intimation she had of the existence of any notes was in 1877, four years after she had accepted the deed, when her husband acquainted her with the fact. If the testimony of the husband to this effect is not admissible, then she had no knowledge of the notes until this suit was brought. Under these circumstances it would be far from equitable to hold the property in her hands chargeable for the payment of these notes. She stands virtually in the position of an innocent purchaser, without notice of any outstanding equities or incumbrance upon the property other than appeared upon the face of her deed. As between the present plaintiff and Mrs. Hall the equities are largely in favor of the latter. She has taken up the mortgage of $1,800, which was upon the property at the time it was deeded to her, thus relieving William from his liability to that extent, and she has since given a new mortgage to the bank for $2,500, upon which the bank holds her note for that amount, and which they can force her to pay without resorting to the property by way of foreclosure. On the other hand the plaintiff has come into possession of the notes in question by way of gift from Catherine Freestone, to whom they had been given by William Hall. She has paid nothing for them and is placed in no worse position than she was in originally if she never collects them.

3. The claim of a vendor's lien can not be sustained. This lien has never been recognized to its full extent in Connecticut. *Dean* v. *Dean*, 6 Conn., 285; *Meigs* v. *Dimock*, id., 464, and note; *Atwood* v. *Vincent*, 17 id., 583. In Maine the doctrine is entirely rejected as inconsistent with the registry laws and policy of the state. *Philbrook* v. *Delano*, 29 Maine, 413. In New Hampshire it is undecided, as well as in Massachusetts. In Vermont the doctrine was abolished by statute in 1851. By the very nature of the case these liens are secret, and often productive of much injustice, and should not be extended beyond the requirements of the settled principles of equity. To recognize it to the extent called for by the plaintiff's claim in this case would result in establishing an unwise policy inconsistent

with our registry laws. If William himself were living, and still held the notes, he would have no right to insist upon this lien, as his conduct shows that he did not rely upon the lien as security for the payment of the purchase money. His agreement with John whereby he was to allow the premises to be mortgaged to an unlimited' extent and without restriction as to time before a mortgage was to be made to himself, precludes the idea of his relying upon this lien for his protection, and is inconsistent with the principles upon which a vendor's lien rests.

4. If a vendor's lien existed in favor of the original vendor, it certainly does not exist in favor of this plaintiff. The lien is a personal right and will not pass to the assignee by assignment of notes given for purchase money. 2 Swift Dig., 115; *Richards* v. *Leaming*, 27 Ill., 431; *Jackman* v. *Hallock*, 1 Ohio, 318; *Brush* v. *Kinsley*, 14 id., 20; *Hallock* v. *Smith*, 3 Barb., 267; *White* v. *Williams*, 1 Paige, 502; *Dickenson* v. *Chase*, 1 Morris (Iowa,) 492; *Iglehart* v. *Armiger*, 1 Bland, 519; *Claiborne* v. *Crockett*, 3 Yerg., 27; *Green* v. *Demoss*, 10 Humph., 371; *Shall* v. *Biscoe*, 18 Ark., 142; Perry on Trusts, § 238; 2 Story Eq. Jur., § 1227.

CARPENTER, J. (After stating the facts.) We think the plaintiff is entitled to the relief sought. We do not rest our judgment however on the ground of a vendor's lien. Conceding that such a lien exists in this state, there may be some difficulty in enforcing it in favor of an assignee. We choose to regard the property as subject to a mortgage in equity.

Mrs. Hall, the only party who appears to defend, cannot object to the establishment of an equitable mortgage against her on the ground that she is a *feme covert*, for she is a mere volunteer. No part of the consideration moved from her. Therefore the case is not within the principle of those cases where courts refuse to set up a deed or enforce a contract specifically against the wife. The underlying principle of those cases is protection to the wife's estate. Here her estate is in no danger. She has paid nothing and is required

to pay nothing, except to pay for property which she has actually received. To apply the principle of those cases to this would be a perversion of it and operate as a fraud.

Nor is it important that she did not know of the agreement to give the mortgage at the time she accepted the deed. She parted with nothing then, and when the agreement afterwards came to her knowledge she could have surrendered the land and have been in no worse condition than she was in before the deed was given. In equity and good consience she was bound to do that or else perform the agreement which was a material part of the consideration for the deed under which she holds.

Here was an agreement in writing, for a good consideration, to give a mortgage. There was an obvious reason for not giving it at the time; the existing mortgage was to be increased and the mortgage agreed to be given was to be a second mortgage. Some delay was unavoidable, and the parties took the precaution to put the agreement in writing, so that no question arises under the statute of frauds.

This seems to be a proper case for the application of the maxim that equity looks upon that as done which ought to have been done. " The true meaning of this maxim is that equity will treat the subject matter as to collateral consequences and incidents in the same manner as if the final acts, contemplated by the parties, had been executed exactly as they ought to have been, not as the parties might have executed them. * * The most common cases of the application of the rule are under agreements. All agreements are considered as performed, which were made for a valuable consideration, in favor of persons entitled to insist on their performance. They are to be considered as done at the time when, according to the tenor thereof, they ought to have been performed." 1 Story's Eq. Jur., sec. 64 *g.* See also Jones on Mortgages, (2d ed.) sec. 163, and cases cited.

Applying these elementary principles to the case before us, it is apparent that, as soon as the mortgage was given to the Savings Society, in March, 1877, the mortgage agreed

to be given should have been given.  If full justice could not otherwise be done, perhaps we might be justified in establishing the mortgage as of an earlier day, on the ground of the delay in giving the first mortgage.  But that does not seem to be necessary, as, under the circumstances, security given after the mortgage was given to the bank will be effectual according to the intention of the parties.

We fail to discover that Mrs. Hall, the defendant, has any equity arising from the fact that she executed a note and mortgage to the Savings Society.  She took the land incumbered to the amount of eighteen hundred dollars. That amount, if she would retain the land, she must pay. The balance she had in cash, and of course it is just and reasonable that she should pay that.  Charging the land subject to that mortgage with the burden of paying the plaintiff's demand is only charging the property which she actually received ; and that does her no wrong.

Nor is it any disparagement of the plaintiff's equity that she received the note as a gift or legacy.  That is a matter which in no wise concerns the defendants.  They cannot be permitted to say to the plaintiff,—" You paid nothing for your notes ; therefore we should be permitted to hold the land without paying for it."  The plaintiff's claim is as meritorious legally as it would have been had she taken them by distribution or purchase.

We advise the Superior Court to render judgment for the plaintiff, and to pass a decree containing in substance a description of the premises, the mortgage to the Litchfield Savings Society, the notes held by the plaintiff and the amount due thereon, and declaring that the real estate, subject to that mortgage, shall stand charged with the payment of the notes in the same manner and to the same extent that it would have been if the defendants had executed a mortgage thereof on the 2d day of March, 1877.

In this opinion the other judges concurred.