FREDERICK A. BETTS, INSURANCE COMMISSIONER, *vs.* THE
   CONNECTICUT LIFE INSURANCE COMPANY OF WATER-
   BURY.

Third Judicial District, Bridgeport, October Term, 1903.
TORRANCE, C. J., HAMERSLEY, HALL, PRENTICE and THAYER, Js.

In consideration of $2,000 received from $W$, the defendant promised in
   writing to pay him, "his heirs, legal representatives, or assigns,
   $\frac{2}{5}$ of one per cent. of the gross monthly premium receipts," such
   payments to be made on or before the 20th of each month, and to
   continue "perpetually, unless otherwise agreed upon." By an-
   other instrument, executed at the same time and as part of the
   same contract, $W$ promised that if these monthly payments should
   exceed a sum equal to eight per cent. interest on the $2,000, such
   excess should be applied monthly upon, and to the reduction of,
   said principal sum; and that when the excess together with such
   payments as the defendant might make to him from the proceeds
   of its unpaid capital stock—which it reserved the right to make—
   should equal said sum of $2,000, the contract should be null and
   void. *Held* that the transaction was intended, not as a purchase
   and assignment of an interest in the premium receipts, but as a
   loan, and should be treated as such by the defendant's receiver.
A finding of a committee, based upon conflicting evidence, that cer-
   tain property assigned as collateral security was limited to a spe-
   cific debt and did not apply to subsequent loans, is conclusive
   upon the trial court and also upon this court upon appeal; unless,
   in reaching such conclusion, the committee made some error of
   law.
Pending proceedings by the insurance commissioner for the appoint-
   ment of a receiver for the defendant company, upon the ground
   that its liabilities exceeded its assets, its president, $P$, agreed in
   writing to take one hundred more shares of its capital stock at par
   ($100) and to pay therefor in part by the cancellation of a note for
   $5,000 which he held against the company. As a result of this
   and other subscriptions, the company was made solvent and the
   application for a receiver was dismissed. Nothing was done to
   enforce this subscription, nor did it come into the possession of
   the receiver subsequently appointed; nor was the note ever can-
   celled or surrendered by $P$ to the company. *Held* that equity
   would treat as done that which in good conscience should have
   been done, and therefore the one hundred shares of new stock be-
   longed to $P$, and the note for $5,000 belonged to the company and
   ceased to be a liability against it.

   Argued October 29th, 1903—decided January 6th, 1904.

APPEAL by certain creditors from an order and decree of the Superior Court for New Haven County (*Gager, J.*) in receivership and insolvency proceedings, disallowing in part their respective claims against the defendant. *Error in part.*

*Lucien F. Burpee* and *William H. Ely*, for the appellants (Lewis A. Platt, Henry L. Wade, and estate of Clark M. Platt).

*Henry C. White* and *Leonard M. Daggett*, for the appellee (the New Haven Trust Co., Receiver).

TORRANCE, C. J.   Henry L. Wade, Clark M. Platt and Lewis A. Platt held separate and independent claims against the defendant insurance company.   Each presented his claim to the committee appointed to receive and examine such claims under the receivership proceedings instituted by the insurance commissioner.   That committee disallowed the claims in whole or in part, the creditors severally remonstrated against the disallowance, but the court overruled the remonstrance and accepted said report, and from that action each of said creditors has appealed to this court.   The present appeal, therefore, involves the consideration of three separate cases, namely, that of Wade, of Clark M. Platt, and of Lewis A. Platt; and as the facts in each case are different, each case will be separately considered in the order above stated.

The facts in relation to Wade's claim are in substance these : In February, 1895, Wade and the defendant company, then called the Connecticut Indemnity Association, entered into a contract which was embodied in two separate writings made, executed and delivered at the same time, one, called Exhibit *A*, signed by the company alone, and one, called Exhibit *B*, signed by Wade alone.   Exhibit *A* recited that in consideration of $2,000 paid said association by Wade, it agrees to pay him, "his heirs, legal representatives, or assigns, $\frac{2}{5}$ of one per cent. on the gross monthly premium re-

ceipts, subsequent to receipts of first policy year, of said association, said commission being payable on or before the twentieth day of each month in each and every year," beginning March 20th, 1895, " and continuing perpetually, unless otherwise agreed upon, said percentage being payable on the premiums received during the month of February, and continuing as aforesaid monthly thereafter." Exhibit *B* had attached to it a copy of Exhibit *A*, and it recites that Wade had entered into an agreement with the association whereby he was to receive " a commission of $\frac{2}{5}$ of one per cent. on the gross monthly premium receipts of said association, subsequent to the receipts of the first policy year, as stipulated in " Exhibit *A*. It then proceeds as follows : " Now, therefore, I hereby agree for myself, my heirs, legal representatives, or assigns, that any excess of said percentage over and above a sum equivalent to eight per cent. interest on the principal sum of two thousand dollars, paid for and in consideration of the above contract, shall be applied monthly upon said sum, and to the reduction of the same. It being understood and agreed that when the said excess as so applied, together with any payments as specified below, shall amount to the aforesaid principal sum paid for and in consideration of said contract, then the aforesaid contract shall be null, void and of no effect. The association, however, preserves the right to cancel this contract at any date by using the proceeds received from settling up the unpaid portion of capital stock, as per vote of the directors under date January 24th, 1894." In consideration of this contract, Wade paid to the company $2,000.

In his remonstrance against the disallowance of part of his claim upon said contract, Wade claimed that the transaction between him and the company was in the nature of a loan and should be treated as such ; but the court overruled that claim and held that he was only entitled to recover the balance of premium receipts unpaid to him, with interest on the same, as allowed by the committee. The question whether the court erred in so doing is the only question in Wade's case ; and the answer to it depends upon the construction to

be put upon the somewhat singular contract embodied in Exhibits *A* and *B*.

These two writings constitute one contract and must of course be read together. Looking at Exhibit *A* alone, it appears that the company, in consideration of $2,000, paid to it by Wade, agrees (1) to pay him monthly, out of premium receipts, a certain percentage thereof absolutely, and (2) to do this perpetually. It does not purport to sell, assign or convey to Wade any right, title or interest in or to the premium receipts; it is in effect a mere promise to pay to Wade a certain sum out of a certain fund monthly forever; and it is a promise to pay to him as his own the whole of the described monthly sum. If Exhibit *A* stood alone, the sum paid by Wade might perhaps be regarded as the price paid by him for a promise of the kind above described; but when both writings are read as one that payment cannot fairly be so regarded. Exhibit *B* materially limits the scope and effect of the agreement or promise in Exhibit *A*. Exhibit *B*, also, conveys to Wade no right, title or interest in the premium receipts, and it cuts down the scope of the promise or agreement in Exhibit *A*. Reading the instruments as one, the promise of the company is only a promise to pay Wade out of premium receipts, if any, eight per cent. interest on the $2,000 until the company repays to him said principal sum in the ways provided for in Exhibit *B;* it is no longer a promise to pay a certain percentage of receipts absolutely and perpetually.

It will thus be seen that all Wade could possibly get out of the contract was interest at the rate of eight per cent. per annum upon the sum paid, and the possible repayment of said sum in the ways provided for in the contract; and that the contract contemplates that the company would forever continue to pay Wade said interest, or would cease to do so only on the repayment of the principal sum. Looking at the language of the contract, and the circumstance that it was largely the contract of an insurance company trying to borrow money from those who would lend, it seems unreasonable to suppose that Wade intended to pay $2,000

for the bare promise of the company to pay interest out of a fund which might never exist, or which might at any time cease to exist, or that the company intended to take his money for any such promise. If such was the sole intention of the parties Exhibit *B* was superfluous. On the whole, reading the two instruments as one, we think it best accords with the intent therein manifested, to hold that the transaction in question was in the nature of a loan ; and that the court below erred in not so holding.

The two claims of Clark M. Platt, now being prosecuted by his executors, are next to be considered. One of these was founded upon a contract made between Platt and the insurance company on the 4th of February, 1895. That contract was the exact counterpart of the Wade contract already considered, except that Platt paid therefor $10,000, and was entitled thereunder to receive one per cent. of the gross monthly premium receipts called for by said contract. The court below, against the remonstrance of the executors, taking the same view of this contract as it did of the Wade contract, allowed, on this claim of Platt, only the balance of premium receipts called for by the contract, with interest thereon, as found by the committee, and accepted the committee's report. For the reasons given in the Wade case, which need not be repeated here, we think the court below erred in so doing.

Clark M. Platt also claimed that certain property, transferred to him by the defendant to secure the payment of a certain note, was also holden as collateral security for the payment of certain loans of money made by him to the company and found due by the committee. Against the remonstrance of the executors, the court below overruled this claim, and whether it erred in so doing is the remaining question in the Clark M. Platt case. The facts in relation to that claim are briefly and in substance these : On the 20th of September, 1898, Platt loaned the company $30,000 and took its note, dated that day, payable to his order on demand, for the amount loaned. On the same day the company, by two written instruments, dated that day, trans-

ferred to Platt the property in question, in one instrument describing the transfer made "as collateral security for a loan of thirty thousand dollars ($30,000), by him this day made" to the company, and in the other as made, "in order to furnish security in part" to him "for a certain loan this day made" by him to it. At this time proceedings were pending before a judge of the Supreme Court of Errors for the appointment of a receiver over the defendant company, but on the 27th of September, 1898, such proceedings were dismissed. On the 29th day of September, 1898, the company paid over to Platt the avails of certain assessments made by it amounting to $16,350.70, leaving a balance then due upon said note of $13,649.30. Between October 1st, 1898, and March 29th, 1899, Platt at divers times made further loans to the company aggregating $14,679.21; while during the same period the amount paid or credited upon said advances was $2,492.66, leaving a balance due Platt on March 29th, 1899, of $12,186.55, with interest upon the advancements to be added. Platt claimed that the property pledged to secure the note was also pledged as collateral to secure the loans made between October 1st, 1898, and March 29th, 1899. With reference to this claim the committee has found, in substance, these facts, in addition to the foregoing : Prior to September 20th, 1898, the company requested Platt to loan it $30,000, and offered to transfer to him as security therefor substantially the same property subsequently transferred to him to secure the loan of September 20th, 1898. " In substance, the company then proposed that Mr. Platt should act as its banker up to the amount of thirty thousand dollars, crediting it with its deposits, and charging it with its withdrawals, up to that amount," holding the property to be transferred as collateral "security for any balance due in the course of this transaction." Subsequently, however, and on September 20th, 1898, the company executed said claimed assignments dated on said date, and delivered to Platt the property described in the assignments. Thereupon Platt paid the $30,000. Afterwards the company paid to

Platt the avails of the assessments, and he made the subsequent loans and advancements, as hereinbefore stated. The committee expressly finds that "there was no evidence" that the property transferred to secure the note was "to be held as collateral security" for the subsequent advancements, or that the agreement evidenced by the written transfers of September 20th, 1898, was ever "modified or changed in any way by the parties thereto"; and it has not found that the prior proposal made to Platt by the company was ever accepted or agreed to by him, or acted upon by him and the company.

The committee has thus in effect found, upon the evidence adduced before it, that no agreement was ever made between Platt and the company that the property, transferred as collateral security for the note, should be held as collateral security for any other loans made or to be made by Platt. This finding was conclusive upon the court below, and is also conclusive upon this court, unless the committee made some error of law in coming to its conclusion; but there is nothing upon the record to show that they so erred. The executors claim, in effect, that the evidence as to the proposed banking arrangement, the subsequent loan of $30,000, and the advancement made after October 1st, favor the view that the property securing the payment of the note also secured the other loans made. This may be conceded; but the evidence was weighed by the committee, and it failed to find that view to be the true one; and there is nothing to show that it erred in so doing. The other facts before the committee were the actual loan of $30,000 on the 20th of September, 1898, a note given for that amount, and a written assignment of specific property expressly limited to secure that single, specific debt. Upon the record before us, and in a contest not between the executors and the company, but between them and other creditors of a bankrupt concern, we cannot say that the committee erred in its finding or that the court erred in accepting that finding.

The claims of Lewis A. Platt, two in number, remain to be considered. He seeks to recover upon a promissory note

made by the company July 2d, 1898, for $5,000, payable on demand to the order of Platt, claiming that it is secured by certain property of the company transferred to him for that purpose at the time the note was made. The claim to recover upon the note will be first considered.

The facts bearing upon the validity of this claim are in substance the following: On or about the time the note in question was delivered to Platt, and as the sole consideration for it, he indorsed a note made by the company for $5,000, which indorsed note the company had discounted at a bank. That note, the terms of which did not appear in evidence, is still held by the bank unpaid, but it was not presented as a claim against the company, and it did not appear in evidence that the contingent liability of Platt as indorser had ever become fixed by demand and notice; but he has paid some interest on the note, and considers himself liable on his indorsement. In August, 1898, application was made to a judge of this court for the appointment of a receiver for the defendant company, and the proceedings had upon that application are made a part of the record. In these proceedings the company, on the 14th of September, 1898, filed a supplemental answer alleging that subscriptions to its capital stock, at par for cash, to the amount of $66,000, had been made, conditioned that $11,000 more should be subscribed and that the proceeding for the appointment of a receiver should be dismissed. It asked for an adjournment of the proceedings, which was granted. Platt was a subscriber to this conditional subscription, for one hundred shares at $10,000. The exact terms of this conditional subscription were not in evidence, but the subscriptions required to make it binding were not obtained. On September 24th, 1898, the company filed a further answer, in those proceedings, alleging that by the compromise of outstanding claims on policies of the face value of $140,000, the company had made itself solvent. A final hearing in said proceedings was had on that day, and at the close of the evidence it was still in dispute between the insurance commissioner and the company, whether its solvency had been proved. The committee, how-

ever, finds that the company was in fact solvent. At that hearing Platt stated, in his testimony, that, on condition that the application should be dismissed, he would take $10,000 more of the capital stock of the company, and pay therefor by the cancellation of notes of the company held by him, or his father ; and before the arguments in said cause had been made, he executed a written subscription for $10,000 par value of the capital stock of said company, agreeing to pay for it in the way above stated. The exact terms of said subscription did not appear in evidence, and such subscription has never come into the possession of the receiver, who has been unable to find the same after diligent search. In said proceedings the note here in question was represented to the judge as a liability of the company, and, further, that Platt held collateral security therefor of the face value of $6,800. Platt was not authorized to make any promise to cancel or surrender, in payment for his said subscription, any of the notes held by his father against the company. The note here in question was the note, or one of the notes, which Platt "stated that he would cancel in payment of his subscription " to the stock of the company. The judge passed a decree dismissing the application for a receivership, and in it he included the following : " 4. It is found that on the 24th day of September, 1898, $10,000 was subscribed for the capital stock of said association, at par, by Lewis A. Platt, president of said association, payable by the cancellation of notes held by him for that amount against the association." He also found, in the sixth paragraph of the decree, that, including Platt's subscription last aforesaid, the assets of the company exceeded its liabilities. Platt was president of the defendant company from 1893 to July 12th, 1897, when he resigned. In September, 1897, he was elected vice-president, and so continued until he was elected president again in July, 1898, which office he held until a receiver was appointed in March, 1899. During all this time he was also a director of the company and a stockholder. After the passage of the decree aforesaid, and until the appointment of the receiver, Platt was " in the active man-

agement of the business and affairs of the defendant com-
pany." The note here in question was never in fact sur-
rendered to the company or cancelled by Platt, but was,
with the security therefor, held by him till he presented it
to the committee. No certificate of stock was ever issued
or tendered to him. Nothing whatever was done to enforce
his subscription of September 24th, 1898. In March, 1899,
upon the application of the insurance commissioner, the de-
fendant company was placed in the hands of a receiver,
under whom its affairs are being wound up.

Upon these facts, substantially, the court below held that
Lewis A. Platt was not entitled to recover upon said note ;
and the question is whether it erred in so doing. In dis-
cussing that question we shall assume, without deciding,
that the note in question was made upon a valuable con-
sideration ; that it was a valid note when first delivered to
Platt, and that, but for what the record shows took place
after its delivery to him, it would constitute a valid claim in
his favor to-day. The record shows that when in August,
1898, application was made for the appointment of a re-
ceiver for the defendant company, its liabilities exceeded its
assets ; that pending said proceedings, and for the purpose
or increasing its assets, it offered shares of its capital stock
for sale for cash at the par value thereof to any one who
would subscribe therefor ; that for the purpose of increas-
ing its assets above its liabilities, it offered some of such
shares to Platt upon said terms ; that he agreed to take one
hundred of said shares, at the price of $10,000, to be paid
for in part by the cancellation and surrender to the com-
pany of the note of July 2d, 1898 ; that the company accepted
his offer and he thereupon, in open court, subscribed for said
shares, conditioned upon the fact that they should be paid
for in part at least by the cancellation and surrender of said
note ; that this was done by himself and the company for
the purpose of making the assets exceed the liabilities, with
a view to securing a dismissal of the application ; that if
made in good faith (and there is nothing to show that it
was not) this transaction did in fact cause the assets to ex-

ceed the liabilities; and that by means of it the company, and Platt as its president, secured the dismissal of the application, because said transaction made its assets to exceed its liabilities.

After such a transaction, on the principle that equity regards and treats that as done which in good conscience ought to be done, the stock belonged to Platt and the note to the company; and the stock should in fact have been issued to him and the note cancelled and surrendered to the company. Platt was in the active management of the affairs of the company, and no good reason is shown why this was not done, and there is nothing to show that it ever became impossible to do it. As president of the company, Platt, under the constitution of the defendant company (Art. 5, § 3), had power, and it was his duty, " to execute all papers legally demanded or requisite in connection with the affairs of the association, subject, however, to the instruction and approval of the executive committee." There is no evidence tending to show that the executive committee refused to approve of the issue of the stock for which Platt subscribed; and if he failed to demand its issue till the stock became of little or no value, the loss must equitably fall upon him and not upon the company or its creditors. There is nothing tending to show that the company ever repudiated the transaction in question or refused to carry out its part of it. The receiver in this case represents, for certain purposes, both the defendant company and its creditors, and whatever rights it or they may have against Platt arising out of said transaction, the receiver may enforce under the direction of the court; *Greene* v. *Sprague Mfg. Co.*, 52 Conn. 330, 361; *New Haven Wire Co. Cases*, 57 id. 352, 388; *In re Wilcox & Howe Co.*, 70 id. 220, 233 ; and in settling an estate under receivership proceedings, the claims of the contesting parties to the trust fund are of an equitable nature, and are to be determined, if need be, upon equitable principles. *In re Waddell-Entz Co.*, 67 Conn. 324, 333; *In re Greeley & Co.*, 70 id. 494. On the whole, upon equitable principles, and upon the facts found with reference to the

claim of Lewis A. Platt upon the note of July 2d, 1898, we think the court below rightly held that the note must in equity be regarded as having been cancelled and surrendered to the company in September, 1898.

In this view of the case of course the collateral security which Platt claims to hold for the payment of the note, is no longer so holden; and the second claim of Platt that it was so holden need not be further considered. This disposes of all the questions that require consideration upon this appeal.

The result is, that in overruling the claim of Wade and of the executors of Clark M. Platt as to their right to recover under the contracts of February 4th, 1895, as set forth in the finding, the court below erred; and its judgment in both cases as to said claims is set aside and the respective causes are remanded that judgment may be rendered in accordance with the views herein expressed.

In the case of Lewis A. Platt, and in the case of the executors of Clark M. Platt with regard to their claim to hold certain property as collateral security for advancements made by Clark M. Platt on and after October 1st, 1898, there is no error.

In this opinion the other judges concurred.