Lester E. Shippee, Bank Commissioner, *vs.*
Pallotti, Andretta & Company, Incorporated.

Maltbie, C. J., Haines, Hinman, Banks and Avery, Js.

Argued October 3d—decided November 7th, 1933.

*Aaron Nassau,* with whom, on the brief, was *Francis P. Rohrmayer,* for the appellant (claimant).

*Frank Covello,* with whom was *John L. Bonee,* for the appellee (defendant's receiver).

HINMAN, J.   The finding discloses the following material facts:   The defendant was a private banker and on December 23d, 1930, because of insolvency, its functions were suspended by the appointment of a receiver.   The Duluth Superior Milling Company, hereinafter referred to as the Mill, is engaged in the flour mill business with a principal office in Duluth, Minnesota.   The First National Bank of Superior, Wisconsin, does its banking business.   Joseph J. Regina is engaged in the business of selling flour in Hartford and vicinity, and the Mill sold him flour in carload lots, the price being payable on arrival; when a car was shipped a draft was drawn and attached to the bill of lading.   At the suggestion of Regina, the drafts and the bills of lading were sent to the defendant for collection.   Each draft sent by the Mill through its bank had stamped across the face, "This draft is a cash item and it is not to be treated as a deposit.   The funds obtained through its collection are to be accounted for to us and are not to be commingled with other funds of collection bank."   Each draft also contained an instruction that "This draft must be paid upon arrival of goods.   Surrender bill of lading only upon payment of draft."   The defendant as the collecting bank received only a collection fee for handling these drafts and was not to commingle the funds or credit them to the Mill, but transmit them immediately to the Mill. For a release of the bill of lading attached to a draft when the draft was not paid upon arrival, it was customary for the Mill through the forwarding bank to send telegraphic advice.

In the regular course of business, from November 1st, 1930, to November 26th, 1930, five drafts with bills of lading attached were sent to the defendant, and these bills of lading were released and surrendered by the manager of the defendant to Regina without written telegraphic authorization and without payment of the drafts to which they were attached. The drafts have remained in the bank unpaid and the Mill has never been paid the amount of them.

The conclusions reached from the facts found were that the relationship between the Mill and the defendant was that of principal and agent; the agent having violated its instructions as to the manner of handling the drafts is liable to the Mill for the loss sustained by the latter, which is $6374.51 with interest; this claim falls within class (3) of § 3955 of the General Statutes, and is entitled to no preference over general creditors or depositors; no trust was impressed upon funds of the defendant in favor of the Mill, as no funds from the payment of the drafts upon which a trust might have been declared ever came into the hands of the defendant.

It has been well established, and the defendant's receiver does not deny, that if a bank receiving for collection a draft with bill of lading attached, under instructions to deliver the latter only upon payment of the draft, surrenders the bill of lading without collecting the draft, it is liable for the loss sustained by reason of such unauthorized action. *Merchants & Manufacturers Bank* v. *Stafford National Bank*, 44 Conn. 564, 567; *National Bank of Commerce* v. *Merchants National Bank*, 91 U. S. 92; *Commercial Bank* v. *Union Bank*, 11 N. Y. 203, 211; *Peninsular Bank* v. *Citizens National Bank*, 186 Iowa, 418, 172 N. W. 293, 19 A. L. R. 547, and note, p. 583; *Second National Bank* v. *Bank of Alma*, 99 Ark. 386, 138 S. W.

472; *Central Trust Co.* v. *Hanover Trust Co.*, 242 Mass. 265, 136 N. E. 336; *Hibernia Bank & Trust Co.* v. *Bank of Topeka,* 288 Fed. 41, 44. In most of the cases involving such a breach of duty, the contention did not relate to the liability of the defendant but to the measure of damages. See note, 19 A. L. R. p. 556 *et seq.* The latter question is not raised by the present appeal, which pertains to the conclusions of the trial court that no trust in favor of the claimant was created by the facts, and that the claim is not entitled to preference over claims of depositors and general creditors. The decisive point is whether the court erred in overruling the claimant's contention that the transactions related by the finding created a trust in its favor.

The instructions of the forwarder being that the drafts were cash items and the proceeds of collection of them were not to be treated as a deposit or commingled with other funds of the bank, if the drafts had been collected and the funds thereby obtained had not yet been remitted but remained segregated in the hands of the defendant banker, the latter would be regarded as trustee with respect to those funds. *Bassett* v. *City Bank & Trust Co.,* 115 Conn. 1, 14, 160 Atl. 60. However, no collection was made; the defendant had in hand no fund created by proceeds of collection but only the uncollected drafts. Notwithstanding, the claimant contends for recognition of a trust as to a sum representing the amount of the drafts, through application and operation of the equitable maxim that "equity regards . . . that as done which . . . ought to be done." 1 Pomeroy's Equity Jurisprudence (4th Ed.) § 364.

The standard expositions of the meaning of this doctrine disclose an obstacle to its application to the present situation in the lack of that definite subject-matter which is essential to a trust. *Bassett* v. *City*

*Bank & Trust Co., supra,* p. 21. The maxim is stated to mean "whenever the holder of property is subject to an equity in respect of it, the court will, as between the parties to the equity, treat the subject-matter as if the equity had been worked out, and as impressed with the character which it would then have borne." *Williamson* v. *Krohn,* 66 Fed. 655, 659, 13 C. C. A. 668; *Lynch* v. *Moser,* 72 Conn. 714, 720, 46 Atl. 153; 1 Pomeroy's Equity Jurisprudence (4th Ed.) p. 676; Adams' Equity (6th Am. Ed.) p. 295. "In order to apply this maxim according to its true meaning the court will treat the subject-matter, as to collateral consequences and incidents, in the same manner as if the final acts contemplated by the parties had been executed exactly as they ought to have been, and not as the parties might have executed them, always regarding the substance and not the form of the transaction." *Sprague* v. *Cockran,* 144 N. Y. 104, 114, 38 N. E. 1000; *Hall* v. *Hall,* 50 Conn. 104, 111; *Lynch* v. *Moser, supra,* p. 720; 1 Story's Equity Jurisprudence (14th Ed.) § 81; 21 C. J. p. 201. In *Lynch* v. *Moser,* and *Hall* v. *Hall, supra,* agreements concerning mortgages were, by application of the maxim, treated as having been performed. In *Betts* v. *Connecticut Life Ins. Co.,* 76 Conn. 367, 377, 56 Atl. 617, as to stock subscribed for by the president of an association, to be paid for by cancellation of a note held by him against the association, it was held that the stock should be treated as belonging to the subscriber and the note regarded as having been cancelled and surrendered to the company. In *Central Trust Co.* v. *Hanover Trust Co., supra,* it was held (p. 268) that the proceeds of a draft, larger in amount, made by the drawee of the draft on which the claim was made and from which the defendant permitted a bill of lading to be detached and affixed to the larger draft, could

not constitute a trust *res* for the plaintiff's benefit. Illustrations demonstrating the necessity of some existing property or specific subject-matter upon which the doctrine may operate might be multiplied indefinitely. No case has been cited to or discovered by us in which the maxim has been held applicable in circumstances comparable to those in the present case. The claimant's contention is, in effect, that although no collection of the drafts was made and the assets of the defendant thereby enhanced by the proceeds, a fund constituting the necessary *res* should be carved out of other assets and subjected to a trust in favor of the claimant, because it was the duty of the banker to make the collection before parting with possession of the accompanying bills of lading. This we regard as beyond the purview and proper application of the doctrine invoked.

Even as to the proceeds of paper sent to a bank for collection and collected by the bank but not remitted before insolvency, to entitle a claimant to priority over other creditors on the ground that he is a *cestui que trust*, he must show that such proceeds, in some form, have gone into the assets of the bank. 6 Michie, Banks & Banking, p. 63. Clearly, if no collection has been made, there is no fund on which a trust could operate, and this fact precludes the declaration of a trust. *Re Assignment of Bank of Oregon,* 32 Ore. 84, 89, 51 Pac. 87. The fault of the defendant from which its liability to the claimant results was not the failure to collect the drafts, but its act in surrendering, without obtaining payment, the bills of lading which were the symbols of title to and represented the flour covered by them, thereby permitting it to pass out of the possession of the claimant. The effect of this action was to render the defendant liable as for conversion. *Market State Bank* v. *Farmers*

*Savings Bank,* 190 Iowa, 1112, 1118, 181 N. W. 486; *Second National Bank* v. *Bank of Alma, supra,* p. 390; *Peninsular Bank* v. *Citizens National Bank, supra,* p. 422. The claim based on this liability is a general one and was correctly classified by the trial court under § 3955 of the General Statutes, as subsequent in order to the expenses of settlement and to payment of deposits and money entrusted for transmission.

There is no error.

In this opinion the other judges concurred.