[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
I.
This is a suit for breach of contract in which the only remedy sought by the plaintiffs is that of specific performance. The plaintiffs allege that in return for the stud services of their male dog, Hung Yen, provided to the defendants' female, Samantha, the plaintiffs would have a pick of the litter puppy.
The plaintiffs represented during the trial that they want delivery of the male puppy in question, or nothing at all.
II
CT Page 4851
After reviewing the evidence, oral and documentary, and having carefully evaluated the credibility of the parties, the court finds the following facts:
1. In accordance with the intent of the parties, in late April, 1996, the plaintiff, Katharine O'Neill, entered into an oral contract with the defendant, Patricia Berth, which provided that the plaintiffs' male, Hung Yen, would be bred to the defendants' female, Samantha, and that the stud service fee would be that the plaintiff had the right to pick a puppy from a litter resulting from this breeding.
2. Pursuant to this contract, Hung Yen was bred to Samantha in early May, 1996 and as a result, on July 5, 1996, Samantha gave birth to a litter of puppies.
3. At the time this contract was entered into, the plaintiff told the defendant that her associate, Kris Valentine, would pick the sex of the selected puppy.
4. On July 14, 1996, Hung Yen was killed, and later that day, Kris Valentine notified the defendant, Patricia Bertha, that he had decided to select a male puppy from the litter born to Samantha on July 5, 1996.
5. The defendant has refused to give the plaintiff a male puppy, and has retained only one male puppy.
6. Different sex-linked genetic traits are carried between males and females; the plaintiffs do not have any male offspring of Hung Yen to carry on his lines, and probably will not be able to obtain one.
7. The defendants wanted to sell the male puppy in question in this case and would have done so if this lawsuit had not been brought.
III
The defendants claim that the plaintiffs have failed to establish a meeting of the minds with respect to the stud fee. The court finds otherwise, based on the testimony of the plaintiffs concerning the conversation of Katherine O'Neill with Patricia Berth in late April 1996, and the conversation of Kris CT Page 4852 Valentine with William and Patricia Berth on July 14, 1996.
Judgment is entered in favor of the plaintiffs on this complaint.
The plaintiffs seek specific performance of the stud fee contract.
 Having brought an action for specific performance, `the plaintiff invoked the equitable powers vested in the trial court.' Frumento v. Mezzanotte, 192 Conn. 606, 615, 473 A.2d 1193 (1984). `The granting of specific performance of a contract to sell land is a remedy which rests in the broad discretion of the trial court depending on all of the facts and circumstances when viewed in light of the settled principles of equity.' Id.; Smith v. Hevro Realty Corporation, 199 Conn. 330, 345, 507 A.2d 980 (1986); H. McClintock, Handbook of the Principles of Equity (2d Ed. 1948) § 54.
Certain principles of equity, therefore, furnish guidance in our disposition of this appeal. `The governing motive of equity in the administration of its remedial system is to grant full relief, and to adjust in the one suit the rights and duties of all the parties, which really grow out of or are connected with the subject-matter of that suit. . . .' 1 J. Pomeroy, Equity Jurisprudence (5th Ed.) § 114; see Maruca v. Phillips,139 Conn. 79, 82-83, 90 A.2d 159 (1952). Equity regards as done what ought to be done; Shippee v. Pallotti, Andretta Co.,117 Conn. 472, 475, 168 A. 880 (1933); 2 J. Pomeroy, supra, § 363; or `which ought to have been done.' Peninsula Methodist Homes Hospital, Inc. v. Cropper, 256 Md. 728, 737, 261 A.2d 787 (1970);Langevin v. Hillsborough County, 114 N.H. 317, 320, 320 A.2d 635
(1974); 2 J. Pomeroy, supra, § 365. "Equity always looks to the substance of a transaction and not to mere form'; ConnecticutNational Bank v. Chapman, 153 Conn. 393, 397, 216 A.2d 814
(1966); and seeks `to prevent injustice." Bump v. Stewart, Wimer Bump, P.C., 336 N.W.2d 731, 736 (Iowa 1983); see 30 C.J.S., Equity §§ 30, 107.
 `The principles of equity evolved as a necessity in order to obtain justice because the law by reason of its universality was deficient. Equity in its true and genuine meaning is the soul and spirit of all law, and positive law is construed by it and rational law is made CT Page 4853 by it. In this, equity is synonymous with justice. Equity depends essentially upon the particular circumstances of each individual case. That being so, there can be no established rules and fixed principles laid down for its application, without destroying its very existence, and reducing it to positive law. The nature of equity is to amplify, enlarge, and add to the letter of the law and every particular case stands upon its own circumstances. Story's Equity Jurisprudence Vol. I, Ch. 1; Chitty's Blackstone, Bk. I, Sec. 1.' (Emphasis in original.) Aetna Casualty Surety Co. v. Jeppesen Co.,400 F. Sup. 394, 403 (D.Nev. 1977).
National Harmony, Inc. v. Normand, 211 Conn. 145, 149, 150
(1989).
Based on the court's factual findings, as detailed in this Memorandum of Decision, the court concludes that in order for justice and fairness to the accomplished, the male puppy, offspring of Hung Yen and Samantha, now in possession of the defendants, be turned over the plaintiffs no later than 12 noon on Saturday, May 24, 1997.
Counterclaim of Defendants
Inasmuch as the court has found for the plaintiffs on their complaint, the defendant's counterclaim for abuse of process fails as a matter of law, and judgment is entered for the plaintiffs on the counterclaim.
WALSH, J.