MARKET STATE BANK, Appellee, v. FARMERS SAVINGS BANK, Appellant.

CARRIERS: Bill of Lading—Transferee Not Subject to Warranty. A collecting bank which receives from the indorsee, for value, a draft with bill of lading attached, and, contrary to instructions, delivers the bill of lading without payment of the draft, is guilty of a conversion of the goods covered by the bill, and may not plead, against the indorsee's action for such conversion, a breach of the original holder's warranty as to the quality of the goods.

*Appeal from Cerro Gordo District Court.*—M. F. EDWARDS, Judge.

FEBRUARY 15, 1921.

ACTION for damages for conversion of bill of lading of a carload of potatoes. Verdict and judgment for plaintiff. Defendant appeals. Facts in opinion.—*Affirmed*.

*Senneff, Bliss, Witwer & Senneff*, for appellant.

*J. E. Williams*, for appellee.

ARTHUR, J.—There is little or no conflict in the evidence constituting the facts of the history of the case. The suit was brought by plaintiff, a Minneapolis bank, against defendant, a bank of Meservey, Iowa, for damages because of its conversion of a bill of lading of a carload of potatoes, and its failure to follow

expressly written directions in the collection of a sight draft to which the bill of lading was attached.

About November 10, 1916, Rutherford-Brede Company shipped, via Chicago, Milwaukee & St. Paul Railroad, a carload of potatoes to Ventura, Iowa, consigned to themselves, by a bill of lading issued by said railway company, which provided that the Merchants Produce Exchange should be notified. The Rutherford-Brede Company then drew a sight draft on the Merchants Produce Exchange Company for $567.60, and attached the bill of lading thereto, which sight draft and bill of lading were, on or about the 10th day of November, 1916, purchased by plaintiff bank. The plaintiff bank thereupon, on or about the 10th day of November, 1916, indorsed and forwarded through the mails to the defendant bank the sight draft and bill of lading, with written instructions to the defendant bank to deliver bill of lading *only* on payment of draft. The bill of lading and sight draft reached the defendant bank on the 11th day of November, and on the same day, the defendant bank delivered the bill of lading to L. B. Hulsebus, manager of Merchants Produce Exchange, receiving from Hulsebus at said time a check for $567.60.

On the same day, Hulsebus delivered the bill of lading to the State Savings Bank, Ventura, Iowa, together with written directions to deliver same to C. E. Kluver, when arrangements were made by Kluver to pay a sight draft for $885.60, which Hulsebus was making on Kluver. The Merchants Produce Exchange Company, through their manager, L. B. Hulsebus, had theretofore sold the carload of potatoes to C. E. Kluver. The potatoes arrived at Ventura at about 4 o'clock on Saturday, November 11th. Kluver did not examine the potatoes on that day, but had an oil stove placed in the car (as it was growing colder) to keep the potatoes from freezing. On Sunday, the next morning, November 12th, Kluver examined the potatoes.

On Monday, the 13th of November, the carload of potatoes, on the instruction of Kluver, was shipped to Mason City, Iowa, via Chicago, Milwaukee & St. Paul Railroad, under bill of lading in which Kluver is named as shipper, and in which said potatoes were consigned to L. B. Hulsebus.

The original bill of lading belonging to plaintiff has not since been found, and is apparently lost to all parties. On Wed-

nesday, Hulsebus examined the potatoes at Mason City, and phoned to Kluver to have the billing changed from him to Rutherford-Brede Company, which request was wired by the railway agent at Ventura to the agent at Mason City, under date of November 15th. Subsequent to the changing of the bill of lading from Ventura to Mason City, Kluver requested the agent at Ventura to secure the original bill of lading for him, which the agent attempted to do, but failed. The record does not disclose what became of the potatoes thereafter.

It appears that, when the potatoes were sorted at Minneapolis, on or about November 10th, they were graded as No. 1 Early Ohio, and were of the value of $1.10 to $1.85 per bushel. It appears that no frozen potatoes were left in the car. The potatoes were loaded in car No. 29738. The freight on the car of potatoes from Minneapolis to Ventura was $104.50, as stipulated by the parties. Contrary to the directions by plaintiff bank, the defendant bank failed to notify the plaintiff bank of its failure to collect the sight draft which it had accepted for collection, and failed to cash the check given to it by Hulsebus, or to remit any part of the same to the plaintiff bank. The plaintiff bank thereupon, on November 27, 1916, wrote to the defendant, asking it to make remittance, or to return the draft and bill of lading at once. Similar demands for remittance were made by the plaintiff bank on the defendant bank on November 29th and December 8th. Defendant bank, in letters written to plaintiff bank, gave as reasons for not remitting that the potatoes were frozen, and as its reason for not returning the bill of lading, as requested, that it had sent the bill of lading to the bank at Ventura, which bank had given it to Kluver, and it had become lost.

This action was brought for damages to recover on account of the conversion of the bill of lading. The gist of the action is the defendant's conversion of property purchased for a valuable consideration and owned by the plaintiff: that is, the conversion by the defendant bank by allowing Hulsebus to take the bill of lading from its possession, and permitting the car of potatoes to be thereby removed from Ventura, out of plaintiff's possession, which the bill of lading represented, and of which it was the symbol.

Plaintiff states cause of action in two counts. In Count 2, plaintiff seeks to recover on the ground that, at the time the bill of lading was delivered by the defendant bank to Hulsebus, Hulsebus paid to the bank the sight draft to which the bill of lading was attached, by giving a check for $567.60 to cover it. In Count 1 of the petition, plaintiff alleges the sale of the carload of potatoes by Rutherford-Brede Company to the Merchants Produce Exchange, at the agreed price of $672.60; delivery of the car of potatoes to the railroad company, with directions to consign said shipment to their order at Ventura, Iowa, and to deliver said car to the Merchants Produce Exchange *only* on surrender of the original bill of lading, which bill of lading was then made out by the railroad company; that the car of potatoes was transported and arrived at Ventura, November 14, 1916; that, upon receipt of the bill of lading from the railway company, Rutherford-Brede Company attached same to a sight draft drawn by it on the Merchants Produce Exchange for the agreed price of the potatoes; that the plaintiff bank purchased from Rutherford-Brede Company, and paid for it, the bill of lading, and forwarded it to defendant bank for payment, and surrendered it to the Merchants Produce Exchange, on condition that the bill of lading should not be surrendered until the draft had been paid, in accordance with the conditions and terms of the bill of lading; and that, in violation of the instructions of plaintiff bank, the defendant bank wrongfully and negligently delivered the bill of lading to Hulsebus, representing the Merchants Produce Exchange, without requiring the draft to be paid, whereby the car of potatoes was lost to plaintiff, and the draft was never paid.

Defendant set up the defense that the Merchants Produce Exchange of Meservey had purchased from the Rutherford-Brede Company the carload of potatoes, which were to be delivered, according to an oral agreement, in good, sound, marketable condition at Ventura; that the Merchants Produce Exchange requested that the bill of lading be sent by the defendant bank to the State Savings Bank at Ventura, Iowa, representing that the Merchants Produce Exchange had sold the carload of potatoes to C. E. Kluver; that the car was to be shipped direct from Rutherford-Brede Company to C. E. Kluver, who would, if

the potatoes were in good, sound, marketable condition, promptly take up the bill of lading and sight draft attached; that the defendant bank, pursuant to such request by the Merchants Produce Exchange, through Hulsebus, sent said sight draft to the State Savings Bank at Ventura, which bank permitted Kluver to take the bill of lading; that, upon examination of the potatoes, it was found that they were not as warranted, but were frozen, and not in marketable condition, and did not comply with the warranty; that Kluver at once notified the Merchants Produce Exchange and the Chicago, Milwaukee & St. Paul Railway Company of nonacceptance, who in turn communicated with Rutherford-Brede Company, and, at the latter's request, the potatoes were shipped to Mason City for weather protection; that the bill of lading, at the request of the agent of the Chicago, Milwaukee & St. Paul Railway Company at Ventura, was delivered to him to enable him to rebill the car, and get the form from which to rebill the same; that, at said time, the railroad agent was advised that the potatoes were not as warranted, and would not be accepted; that, subsequent to the shipment to Mason City of the potatoes, the Rutherford-Brede Company agreed with the Merchants Produce Exchange to look after the potatoes.

Defendant avers that the carload of potatoes was not converted by it, and that the bill of lading was never used by the defendant bank, or any other person, to the injury of plaintiff; that plaintiff has not suffered any damages for and on account of any acts done by the defendant.

The case was submitted on both counts. We may omit discussion of the submission of Count 2 of the petition, because it is evident that the verdict was not based thereon, further than to say that there was no prejudicial error in submitting Count 2.

Counsel for plaintiff and defendant, at the trial and on this appeal, have entirely divergent theories of the law under which the case should have been submitted. The plaintiff contends that it is purely a case of conversion by the defendant bank of the bill of lading representing or symbolizing the car of potatoes, by permitting the bill of lading to go out of its possession, and, therefore, out of plaintiff's possession, and to become lost to plaintiff, and, therefore, the potatoes which it represented, to become lost to plaintiff.

The defendant contends that its giving up the possession of the bill of lading was merely an innocent mistake, and that, because of its innocence, it should not suffer, and that it is not liable in any event, because the potatoes were not of the quality warranted in the sale of the potatoes by the Rutherford-Brede Company to the Merchants Produce Exchange Company; and that the potatoes were of no value whatever, on account of being frozen: and defendant contends that its acts do not constitute conversion, in any event.

Defendant bank, in the trial below and on this appeal, attempts to hold the plaintiff bank liable on the contract made between the Rutherford-Brede Company and the Merchants Produce Exchange Company, wherein the Rutherford-Brede Company warranted the potatoes to be in good, sound, and marketable condition. In other words, the defendant bank claims that. the defense of breach of warranty was available to it, and that it had the same right to interpose the defense that the potatoes were not good, sound, and marketable potatoes against the plaintiff bank as it would have against Rutherford-Brede Company, if it were attempting to recover the agreed price of the potatoes. Defendant strenuously urges that the plaintiff bank stands in no better position than the shipper, and that the defense of breach of warranty of the quality of the potatoes is as available against plaintiff bank as it would be against the original shipper. The trial court did not accept defendant's view. Counsel for defendant rely on *Tolerton v. Anglo-Cal. Bank,* 112 Iowa 706, and quote quite extensively from that case. We scarcely think it bears out their contention. Counsel particularly call attention to a clause in the opinion reading:

"While the rights of such assignee are to be measured by those of his assignor, his liability is not necessarily the same."

Immediately following the above quotation appears:

"Defendant bank could not have compelled payment by plaintiff of any greater sum than could have been collected by the Canneries Company, but on what theory can we say it is liable on a contract of warranty which it never made?"

Counsel for defendant, in effect, would invoke the rule announced in *Landa v. Lattin Bros.,* 19 Tex. Civ. App. 246 (46 S. W. 48), which this court refused, in the *Tolerton* case, to adopt.

The doctrine announced in the *Landa* case was that the assignee stands in all respects in the shoes of the assignor; and that the transfer of the draft and bill of lading to the bank amounted to a sale of the goods; and that the bank, as purchaser, undertook to deliver the goods and carry out the contract of the assignor, the original shipper; and that, because of such facts, the assignee of the bill of lading and draft assumed the contract of warranty made by the original seller and shipper, although the assignee bank may have been, in fact, ignorant that any warranty was made.

In the instant case, while the plaintiff bank could collect no more than its assignor would have been entitled to collect, the character of its engagement was not such as to impose upon it any liability to the buyer, or to the defendant bank, which it did not expressly assume. Plaintiff bank had nothing to do with the original contract between the seller and the buyer, and cannot be bound by any warranty contained in that contract. Without doubt, the great weight of authority is that the purchaser of a draft with a bill of lading attached is not liable on a warranty made by the assignor. In fact, the *Landa* case and but few others hold to the doctrine that the purchaser of a draft with bill of lading attached is liable on a warranty made by the assignor. *Tolerton v. Anglo-Cal. Bank*, 112 Iowa 706; *First Nat. Bank v. Felker*, 185 Fed. 678; *Cosmos Cotton Co. v. First Nat. Bank*, 171 Ala. 392 (32 L. R. A. [N. S.] 1173). In the *Cotton* case, the question is exhaustively discussed.

There is no doubt that the bill of lading representing the carload of potatoes was a subject of conversion; and that the act of defendant bank in delivering to Hulsebus the possession of the bill of lading, in violation of its instructions, and thereby permitting the car of potatoes to be removed from Ventura and out of plaintiff's possession, constituted conversion of the potatoes of which the bill of lading was the symbol. The court was without error in submitting the cause of action based on conversion, and in such submission, instructing the jury that the acts and conduct of the defendant bank, Hulsebus, Kluver, the Bank of Ventura, and the railway company, as a matter of law, amounted to a conversion of the bill of lading and the car of potatoes.

Defendant assigns as error the submission to the jury of the value of the potatoes. The court instructed the jury that the defendant bank was liable for the market value of the potatoes, if the evidence showed that they had a market value at Ventura, Iowa, at the time they were removed therefrom, in excess of $104.40, as it was admitted that $104.40 comprised the freight charges which would have to be paid before the potatoes could be disposed of. Such instruction was without error, and there was sufficient evidence to support the finding of the jury as to the value of the potatoes.

We have examined all assignments against rulings on evidence and instructions of the court, and find no error. Judgment of the trial court is—*Affirmed*.

EVANS, C. J., STEVENS and FAVILLE, JJ., concur.