FIRST NATIONAL BANK OF WADENA, Appellee, v. FARMERS SAV-
INGS BANK OF TRAER, Appellant.

**NEGLIGENCE: Acts Constituting—Surrendering Order for Delivery**
1 **of Goods.** A bank which holds for collection a sight draft representing the purchase price of a shipment of goods, and also an order from the shipper, directing delivery of the goods to the consignee (impliedly when the draft is paid), is not guilty of actionable negligence if it delivers the delivery order to the consignee (without exacting payment of the draft), for the sole purpose of enabling him to *inspect* the goods, when the bill of lading gave the consignee

the right to *inspect* the goods, and when the consignee utilized the delivery order solely for that purpose.

**CARRIERS: Carriage of Goods—"Symbol of Title."** An *order* for the
2    delivery of a shipment of goods to the consignee when the latter pays the sight draft accompanying the bill of lading is not the "symbol of title" to the goods.

*Appeal from Tama District Court.*—B. F. CUMMINGS, Judge.

APRIL 8, 1922.

OPINION ON REHEARING MAY 15, 1923.

ACTION to recover damages for alleged negligence in wrongfully surrendering a delivery order for a carload of potatoes, which order had been forwarded by the plaintiff to the defendant, accompanied by a sight draft. The court directed a verdict in favor of the plaintiff for the amount of said sight draft, and the defendant appeals. The facts appear in the opinion.—*Reversed.*

*Pickett, Swisher & Farwell,* for appellant.

*Struble & Stiger,* for appellee.

FAVILLE, J.—Peterson-Biddick Company is a corporation, having its principal place of business at Wadena, Minnesota. On or about the 13th of January, 1920, it sold a carload of potatoes to one Keith, who resided at Traer, Iowa.

1. NEGLIGENCE: acts constituting: surrendering order for delivery of goods.

The potatoes were shipped by said Peterson-Biddick Company, consigned to said company. Peterson-Biddick Company drew a sight draft on Keith for the net amount due for said potatoes, being the sum of $1,494.34. The sight draft and bill of lading were negotiated by Keith to the appellee bank. It is the contention of appellee that the said sight draft, with the bill of lading and a so-called "delivery order," were forwarded by the appellee to the First National Bank of Traer, Iowa, and were subsequently delivered by said bank to appellant. It is the contention of appellant, and the evidence sustains such contention, that the only papers delivered to it by the First National Bank of Traer were

the sight draft and the delivery order. The sight draft was in the usual form, and the delivery order was as follows:

"Wadena, Minnesota, January 14, 1920. Freight Agent, R. I. Ry., Traer, Iowa: Deliver CB&Q 38423, potatoes, J. E. Keith. [Signed] Peterson-Biddick Company, E. M. Rice."

It appears from the evidence that the duplicate bill of lading which accompanied the shipment and was in the possession of the railway company provided that inspection of the potatoes should be allowed. When the potatoes arrived at the destination, the purchaser, Keith, made a request of the agent of the railway company for permission to inspect the potatoes. The agent refused to allow such inspection until the freight was paid, and until Keith produced and surrendered to said agent the delivery order from the consignee then in possession of appellant bank. Thereupon, Keith paid the freight to the agent of the railway company. He represented to the appellant that it was necessary for him to obtain the delivery order, in order to comply with the demands of the agent of the railway company and to enable him to obtain an inspection of the potatoes. The bank turned the delivery order over to Keith for said purpose only, and Keith took the same to the agent of the railway company, and thereupon the said agent permitted Keith to make an inspection of the potatoes. The weather was cold, and Keith took a certain quantity of the potatoes from the car and inspected them, and finding them unsatisfactory, returned to the car the potatoes which he had taken, and notified the agent of the railway company that he had refused to accept the potatoes, and also notified the appellant to said effect. The delivery order was not returned to the appellant, but remained in the hands of the agent of the railway company. The latter communicated promptly with the shipper, Peterson-Biddick Company, and notified it of the refusal of Keith to accept the potatoes. Keith also notified the said consignor of his refusal of the shipment, and also that the draft had been refused. There is no evidence that any notice of the refusal of Keith to accept the potatoes was given to the appellee by any person. Thereafter, the railway company continued for some time to keep the potatoes in the car in which they were shipped, and kept up a fire to prevent them from freezing, and in due time sold them as perishable

freight. The appellant did not return the sight draft to the appellee.

Appellee's action is based wholly upon negligence, the allegation of the petition being that the appellant, "in violation of the [its] duty as agents of the plaintiff, did wrongfully and negligently surrender to the said J. E. Keith said order for delivery of said potatoes without first receiving the payment of the sight draft attached to said order." No other ground of negligence is alleged or relied upon, so that the only question in the case is whether or not, upon the foregoing state of facts, the appellant can be held liable for the amount of said sight draft because of its alleged negligence in surrendering said delivery order to Keith without the payment of said sight draft.

Was the appellant guilty of negligence in letting Keith have the delivery order, so that it became liable for the full amount thereof? The appellant never had the bill of lading in its possession. All the papers that it had were the sight draft and the delivery order. The undisputed evidence shows that it turned the delivery order over to Keith solely for the purpose of permitting him to inspect the potatoes. It never received any money from Keith. It is true that Keith surrendered this delivery order to the agent of the railway company, who kept it, and that it did not come back into the possession of the appellant, and was never returned to the appellee. Under this delivery order, Keith did just what he had a right to do under the bill of lading, without the delivery order,—he inspected the potatoes. He did not pay the sight draft. Undoubtedly, if Keith had taken possession of the potatoes under the delivery order, and had kept the potatoes without paying the sight draft, the appellant would have been liable to appellee, although appellant furnished the delivery order to Keith solely for the purpose of permitting him to inspect the potatoes.

It is contended by the appellee that the delivery order was "the symbol of title," and that the turning over of the delivery order to Keith without payment of the sight draft was such negligence on the part of appellant as renders it liable. The delivery order did not, in this case, permit Keith to acquire title and secure possession of the potatoes. It was not the "symbol of title."

2. Carriers: carriage of goods: "symbol of title."

It was a mere order. The bill of lading was the "symbol of title." Keith never acquired title to the potatoes. The delivery order did not give him such title. It gave him the opportunity to inspect; but, under the undisputed testimony, the title to the property would not have passed to Keith without the payment of the sight draft, or delivery of the bill of lading.

What did the appellee lose by reason of the appellant's permitting Keith to have the delivery order for the purpose of inspection? He did not take possession of the property thereunder. He exercised no control of it. He simply inspected the potatoes, and then promptly refused to take them. He paid the freight to the railway company before they would allow the inspection, and later sued, and recovered that from the consignor. He never acquired title to the potatoes. He never converted them to his own use, and they were not lost to the consignor by reason of Keith's having received the delivery order. If by appellant's act the appellee lost title to the potatoes, the appellant would be liable for negligence. But appellee did not lose title to the potatoes by anything that appellant did. They remained in the railway yards, in charge of the railway company, until sold by it as perishable freight. The appellant did not negligently permit the title of the potatoes to pass to Keith. The title never did so pass. It must be borne in mind that appellee's cause of action is based solely upon negligence in letting Keith have the delivery order without first getting the money on the sight draft.

The case is distinguishable from *Market St. Bank v. Farmers Sav. Bank*, 190 Iowa 1112. In that case, the bill of lading was sent to the collecting bank. We held that the bill of lading represented the carload of potatoes, and that it was the symbol of title. The defendant bank delivered the possession of the bill of lading to the purchaser, without getting pay for the potatoes, and in violation of the instructions. This permitted the car of potatoes to be removed, and to get out of the possession of the plaintiff; and we held that this constituted conversion of the potatoes, and rendered the bank liable.

In this case, the potatoes were not lost to the consignor or to the appellee by reason of anything that the appellant did or failed to do. Assuming that appellant had no right to turn the

delivery order over to Keith to permit him to make the inspection, still the title to the potatoes did not pass to Keith, nor were the potatoes lost to the consignor or to the appellee because thereof. Appellee did not lose anything by reason of the alleged negligence of the defendant in permitting Keith to have the delivery order for the purpose of inspection, when Keith did not take possession of the potatoes under it, and refused to pay the sight draft after he had made the inspection. The appellee was then in exactly the same position as though the delivery order had remained in the possession of the bank all the time. If Keith had acquired any right to the potatoes, or had converted the potatoes, under the delivery order which he obtained from the appellant, or if the appellee had lost anything by reason of the appellant's letting Keith have possession of the delivery order, we would have an entirely different situation with which to deal. Appellee suffered no damages because Keith inspected the potatoes under the delivery order. He did not obtain title to them, nor did he convert them.

In *Southern Exp. Co. v. Grace,* 109 Miss. 268 (68 So. 172), it appeared that Grace delivered to the express company four dresses, for shipment to a certain party for whom they had been made. The goods were shipped C.O.D. When they arrived at their destination, the agent of the express company permitted the consignee to take the goods out of the office for the purpose of examining them, before paying the charges. The consignee accepted one of the dresses, valued at $11, and delivered the rest back to the agent of the express company, together with the $11. Suit was brought to recover the value of all of the dresses, on the claim that they had been delivered without collecting the entire charge, as the C.O.D. required. The court adopted the following rule from 2 Hutchinson on Carriers (3d Ed.), Section 733, as follows:

"The 'consignee is entitled to reasonable opportunity to inspect goods forwarded by a carrier, to be paid for on delivery, before he accepts them, and the carrier may offer him such opportunity without becoming chargeable for the price.' * * * In the present case the plaintiff lost nothing by defendant's violation of instructions. If the consignee had kept the dresses, we would have an entirely different case."

In *Lyons & Co. v. Hill & Co.*, 46 N. H. 49, the shipment was C.O.D. The consignee paid the full amount, took the shipment home, and after examining it, returned it to the express company, as not complying with his contract, and demanded return of his money. At the time he paid the money and took the goods out of the office, it was understood that the money would be held by the express company until he had inspected the goods. When the consignee returned the goods, the defendant's agent paid back the money. Suit was brought by the consignor, to recover the amount of the money which had so been paid. The court held that the consignee had the right to examine the goods without being held to accept them, and that the carrier had a right to give him facilities for making such a reasonable examination, and said:

"The case is not altered by his requiring the consignee to pay the amount charged, for his own security while being so examined, for this is in no sense a payment of the price."

In this case, appellant did not require the deposit of the price by Keith, before letting him have the delivery order solely for purposes of inspection, and even if it had, under the rule of the New Hampshire court, it would not be liable to appellee when Keith refused the potatoes after such inspection.

The vital questions in the case are whether or not the delivery order was, as a matter of law, "the symbol of title," and whether or not appellee lost anything by the delivery of the same to Keith for the purpose of inspection. The case resolves itself into this situation: The sight draft and delivery order were sent to the appellant. The delivery order was to be turned over to Keith when the sight draft was paid. It was turned over to Keith on demand of the railway company, without the payment of the sight draft, for the *sole* purpose of permitting Keith to comply with the requirements of the railway company before permitting him to make an inspection. He had that right under the bill of lading; but, for its own protection, the railway company would not grant him that right until it also had possession of the delivery order, which the railway company construed as being protection to them from the consignee to permit the inspection, in addition to the provisions of the bill of lading. The appellant permitted Keith to have possession of the delivery

order without payment of the sight draft, for this purpose only. Keith inspected the potatoes, and refused to accept them or pay for them. What did the appellee lose by reason of the appellant's permitting Keith to have the delivery order for this purpose? The title of the potatoes did not pass to Keith. They were not converted. They were not lost to the appellee or to the consignor. Appellant was not liable for negligence to the extent of the sight draft, merely because it let Keith have the delivery order for this purpose of inspection, under these circumstances.

We must and do limit our holding to the allegations of the petition and the facts shown by the record in support thereof. It is our conclusion that the trial court erred in directing a verdict in behalf of the appellee. The judgment must be, and it is,—*Reversed*.

PRESTON, C. J., EVANS and STEVENS, JJ., concur.